IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK CLAY,

            Plaintiff,

vs.                                 Case No. 05-1319-JTM

JO ANNE B. BARNHART,
Commissioner of Social Security,

            Defendant.

**MEMORANDUM AND ORDER**

      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, which authorizes judicial review of a final agency decision. Plaintiff argues that the Administrative Law Judge ("ALJ") made errors in the sequential analysis and in the formation of the Residual Functional Capacity ("RFC"). Plaintiff also argues that the ALJ did not state the weight assigned to the treating and non-treating physicians as required under the Social Security Rulings. After reviewing the parties' arguments, the court finds in favor of defendant.

**I. PROCEDURAL HISTORY**

      Plaintiff Mark Clay filed applications for disability insurance and supplemental security income benefits on or about July 10, 2002, alleging an onset date of disability of June 27, 2002. (Tr. 74-76, 373-375). Plaintiff states he was born in May 1963. (Tr. 74). On October 31, 2002, plaintiff's initial applications for benefits were denied. (Tr. 35-40). On or about November 25, 2002, plaintiff filed a timely Request for Reconsideration (Tr. 41), which was denied on February

11, 2003. (Tr. 43-51). The plaintiff then filed a timely request for a hearing before an ALJ on or about February 25, 2003. (Tr. 52). A hearing was held on February 6, 2004, before ALJ Melvin B. Werner. (Tr. 58-62, 18). The ALJ issued his decision denying the plaintiff benefits on March 26, 2004. (Tr. 15-29). Plaintiff then made a timely request for review of the ALJ's Decision. (Tr. 12-14). The Appeals Council denied plaintiff's request for review on September 12, 2005, thereby rendering the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (Tr. 5-9). Plaintiff brought this action requesting review by this court and an order reversing the Commissioner's decision.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Miller v. Chater, 99 F.3d 972 (1996); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989); Kemp v. Bowen, 816 F.2d 1469, 1475 (10th Cir. 1987). Substantial evidence requires the presence of enough relevant evidence that a reasonable mind might consider the Secretary's decision adequately supported. Richardson, 402 U.S. at 401. The court must scrutinize the record and take into account whatever evidence fairly detracts from the evidence supporting the Secretary's findings. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984). An absence of substantial evidence will be found only where there is a conspicuous absence of credible choices and no contrary medical evidence. Trimiar v. Sullivan, 966 F.2d 1326, 1328 (10th Cir. 1992). Evidence is insubstantial if it is overwhelmingly contradicted by other evidence. O'Dell v. Shalala, 44 F.3d 855, 858 (10th

Cir. 1994); Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987) (citations omitted). The function of the district court is to determine whether there is evidence to support the decision of the Secretary and not to reweigh the evidence or try the issues de novo. If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.

The Secretary employs a five-step process in determining the existence of a disability, Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), a process which ends at any point if the Secretary determines the claimant is disabled or not. The steps, in order, require determinations of whether the claimant: 1) is currently engaged in substantial gainful activity; 2) has a medically severe impairment or combination of impairments; 3) has an impairment equivalent to one of a number of extremely severe impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1; 4) is unable due to the impairment to perform past work; and 5) has the residual functional capacity to perform other work available in the national economy, considering age, education, and past work experience. See Kemp v. Bowen, 816 F.2d 1469, 1474-75 (10th Cir. 1987).

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). The burden is on the claimant to prove the existence of a disability that prevents him from engaging in his prior work for a continuous period of twelve months. Trimiar, 966 F.2d at 1329. If the claimant makes such a showing, the Secretary must show the claimant is able to do other work in jobs present in the national economy. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

**III. ANALYSIS**

Plaintiff raises several arguments challenging the ALJ's evaluation. First, plaintiff claims the ALJ erred in step two of the sequential analysis. Next, plaintiff argues that the ALJ erred in step three in assessing that plaintiff's impairments or combination of impairments did not meet the listing. Finally, plaintiff argues that the ALJ erred in his RFC analysis.

**A. Step Two of the Sequential Analysis**

At step two, the claimant bears the burden of proving a severe impairment. See 20 C.F.R. § 404.1512(a). A severe impairment is one that interferes with basic work activities. 20 C.F.R. §§404.1521(a)-(f) and 416.920; Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993). While the standard is "de minimus," the claimant must show more than the mere presence of a condition or ailment. See Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (noting that the efficiency and reliability of the evaluation process is increased if the ALJ identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). The step two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

The court will first address the alleged error in failing to identify Hepatitis C as a severe impairment. The ALJ concluded that Hepatitis C was not confirmed in the medical evidence and thus was not a medically determinable impairment. (Tr. 23). In medical records dated November 1999, plaintiff returned a "detected" result for Hepatitis C RNA Qual. (Tr. 214). In May 2000, plaintiff saw Dr. Kilgore regarding a serological diagnosis of Hepatitis C. (Tr. 238). Dr. Kilgore

indicated that plaintiff was positive for Hepatitis C RNA as of March 13, 2000. (Tr. 239). The doctor noted that since plaintiff was only minimally symptomatic he would not be recommending therapy until plaintiff underwent further monitoring. (Tr. 239). The doctor noted that he believed that the side effect profile of rebetron would outweigh its benefits and thus recommended waiting two months to discuss further options. (Tr. 239). At the same time, a medical test stated that a repeatedly reactive result may not necessarily constitute a diagnosis of Hepatitis C. (Tr. 241). However, this was at least the second time plaintiff was tested for the same condition. Since his 2000 medical visit, there is no record evidence to which the parties point that indicate that plaintiff was treated or followed up on his hepatitis.

     Although defendant is correct in pointing out that the medical record includes mention of Hepatitis C, there is no medical evidence that this condition was treated in the years following the 2000 medical visit. Plaintiff provides a lengthy medical history and seems to imply that Hepatitis C may explain some of the descriptions, but plaintiff did not cite treatment notes that included mention of any reoccurrence or treatment of Hepatitis C. If plaintiff was aware of a previous Hepatitis C diagnosis, it would seem logical that he would at least mention this condition to his treating physician in the interim. Where there is no medical treatment or notes of the presence of a condition for such a lengthy period of time, the ALJ could properly conclude a lack of a medically determinable impairment. Although plaintiff must only meet a de minimis evidentiary standard, plaintiff must also present medical evidence that the impairment exists beyond treatment notes that are four years old. Plaintiff did not even list the condition in his application for disability. Since there is such a long time lag and no follow up medical notes, the ALJ's determination was proper.

Next, the court evaluates the ALJ's sequential analysis of plaintiff's visual impairments. Plaintiff has corrected vision of 20/50 and 20/70. (Tr. 303, 342, 401).  Mr. Clay claims vision loss and blurred vision.  Plaintiff argues that he sought treatment for hypertensive retinopathy by seeking blood pressure treatment, which he claims is the only method of treatment of hypertensive retinopathy.  Plaintiff argues that the ALJ appears to have misunderstood that by seeking blood pressure treatment plaintiff was also seeking treatment of his vision.  Defendant responds that plaintiff failed to take his hypertension medication, despite having a medical card and receiving samples from his doctor.

The court finds that substantial evidence supports the ALJ's findings.  Although plaintiff sought treatment for his condition, he did not follow through with his treatment.  The record indicates that plaintiff engaged in a number of activities such as reading and driving. The medical evidence does not indicate that plaintiff's visual impairments were severe.  The ALJ could properly reach this conclusion.

## B. Severity as Compared to Listed Impairments

The court now addresses step 3 of the sequential evaluation.

At step three, the court evaluates whether the plaintiff's impairments or combination of impairments meet a listing. Social Security Ruling 86-8.  "[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Bowen v. Yuckert, 482 U.S. at 153.

Plaintiff argues that the ALJ failed to conduct an analysis at step three to determine whether a combination of plaintiff's impairments met a listing. SSR 86-8.  In particular, plaintiff

argues that the ALJ erred in finding plaintiff did not meet Listing 1.04.

>The relevant listing provides:
>1.04 *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing of Impairments at 20 C.F.R. Part 404, Appendix 1, Subpart P.

The medical evidence indicates and the ALJ found that plaintiff had a severe impairment of the degenerative disc disease of the lumbar spine. (Tr. 22). Dr. Henderson noted that plaintiff had <u>minimal-mild</u> disc space narrowing between L1 and L4 and a limited range of motion in the lumbar spine on that day. (Tr. 305). Plaintiff's straight leg raising was 30 degree on the right and 30 degrees on the left. (Tr. 304). The record also indicated that plaintiff had coordinated and symmetric motor functioning and "present and equal" reflexes. (Tr. 303). Plaintiff had no reflex, sensory or motor deficit, though the consulting doctor indicated there was sensory loss in both lower extremities. (Tr. 305). The record indicates that plaintiff had severe difficulty with heel and toe walking, hopping and moderate difficulty squatting and rising from the sitting position. (Tr. 304).

The record indicates that plaintiff had some impairments. However, the listing requirement states that the claimant must have motor loss <u>accompanied by</u> sensory <u>or</u> reflex loss. The medical record indicates that plaintiff had no motor deficit, though there was limited range of motion of the lumbar spine on that day. Additionally, there was no evidence of atrophy with associated muscle weakness or muscle weakness. There was also no reflex loss but only sensory

7

loss.  Accordingly, plaintiff does not meet the listing requirement.  The ALJ's findings were supported by substantial evidence.

**C. Residual Functional Capacity**

At step four of the analysis, the ALJ determines the claimant's RFC.  Plaintiff argues that there was a number of errors at this step.

First, plaintiff argues that the ALJ improperly expressed the RFC in terms of exertional levels before determining plaintiff's functional limitations or restrictions.  Defendant responds that the ALJ complied with the intent of SSR 96-8p by conducting a function-by-function assessment prior to expressing the RFC as an exertional category.

In relevant part, the ALJ found that claimant was limited to sedentary work.  Then, the ALJ described the functional limitations such as the amount of hours during the day plaintiff could sit, stand or walk and the number of pounds plaintiff could lift on occasion and frequently.

Social Security Ruling 96-8p paragraph 4 states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

The court is in agreement with defendant.  Although the ALJ conducted a function-by-function analysis, but stated the exertional category prior to this more detailed discussion, the ALJ conducted the detailed scrutiny of the medical evidence to comply with the intent of SSR 96-8p, and his attention to the limitations indicates he understood that the exertional level was the conclusion of this analysis.  The court finds that substantial evidence supports the ALJ's findings.

Next, plaintiff argues that the ALJ failed to explain the basis of the RFC findings. Specifically, plaintiff argues that the ALJ did not state how he concluded plaintiff could lift up to 10 pounds on an occasional basis and that plaintiff should avoid exposure to extreme cold, heat and wetness. (Tr. 26). Defendant does not respond to these specific claims but states that the ALJ adequately explained his RFC findings and provided a narrative.

The ALJ analyzed the record medical evidence and plaintiff's own assessment of his physical limitations to conclude that plaintiff was limited in what he could lift. The ALJ took this into account by finding that plaintiff could only lift nominal weight on a frequent basis and 10 pounds occasionally. The ALJ also could find that plaintiff was limited to what temperature and conditions to which he could be exposed based on his severe impairments. Substantial evidence supports the ALJ's findings as medical and claimant testimony support these limitations.

Third, plaintiff argues that the ALJ failed to resolve inconsistencies between his RFC and the record medical opinions. Plaintiff points to inconsistencies between the RFC imposed by the ALJ and the reconsideration reviewers. In particular, Dr. Parsons marked the "frequently" box for postural limitations and wrote "NEVER" beside the climbing ramp stairs/, ladder/rope/scaffolds (Tr. 320), but the ALJ indicated plaintiff could occasionally climb ramps and stairs. (Tr. 26). Additionally, Dr. Parson stated he would frequently limit balancing, stooping, kneeling, crouching and crawling. Finally, plaintiff argues that Dr. Parsons noted that plaintiff should avoid concentrated exposure to noise and vibrations, though the ALJ found that plaintiff should only avoid vibrations. Defendant responds that the ALJ considered the record as a whole in fulfilling the narrative requirement.

SSR 96-8p requires the ALJ to link his RFC determination with specific evidence in the record and to explain how any inconsistencies or ambiguities in the record were considered and resolved. The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2005). The ruling also includes narrative discussion requirements for RFC. Id. At 149.

The court is in agreement with defendant. The limitations which plaintiff describes as contradictory to the record are in fact a result of a careful analysis of the record. The ALJ clearly acknowledged that plaintiff should not be climbing ladders, ropes or scaffolds and in this was in agreement with Dr. Parsons. (Tr. 26). However, based on plaintiff's activities and his limited mobility, the ALJ noted that plaintiff could climb ramps and stairs. The ALJ incorporated Dr. Parsons' frequent limitation of plaintiff's balancing, stooping, kneeling, crouching and crawling by stating that plaintiff could do these activities more than occasionally. The court does not find it significant that Dr. Parsons stated that plaintiff should avoid noise and vibrations and the ALJ only stated vibrations. The ALJ substantially incorporated the limitations indicated by Dr. Parsons' analysis except as the record review indicated that plaintiff could do more or less.

Fourth, plaintiff argues that the ALJ failed to perform a function-by-function analysis of plaintiff's ability to do past relevant work. Specifically, plaintiff argues that the ALJ failed to make appropriate fact findings as to plaintiff's past relevant work as a telemarketer. Also, plaintiff argues that the ALJ did not give the vocational expert any description of plaintiff's past relevant work. Finally, plaintiff argues the ALJ did not reconcile the opinions of consultative doctors. Defendant notes that the ALJ made the specific finding that plaintiff could not perform

his past relevant work as plaintiff had performed it but could perform that job as generally performed in the national economy. Defendant adds that the vocational expert acknowledged this distinction in providing the definition of a "telephone solicitor" in response to the hypothetical question. (Tr. 27-28). Finally, defendant notes that the ALJ discussed the opinions of the consultants but in the end adopted an RFC more favorable to plaintiff, and plaintiff's analysis does not state that the error was prejudicial to plaintiff.

In regard to each argument, the court is in agreement with defendant.  Defendant is correct to state that the ALJ acknowledged the limitations to plaintiff's past relevant work as plaintiff performed it but that plaintiff could perform the job since it was a sedentary exertional level in the national economy.  (Tr. 26-27).  Thus, the court rejects plaintiff's first objection to the ALJ's finding.  As for the vocational expert, the ALJ's questioning indicated that the ALJ was aware of plaintiff's previous work and its limitations.  Therefore, the vocational expert noted that even if plaintiff could not return to his past work, he could perform a significant number of jobs in the national economy in unskilled sedentary occupations and sedentary unskilled occupational base.  Counsel had an opportunity to expose errors in the vocational expert's opinion if he believed the analysis was lacking.  As for the reconciliation of the opinions of the consultative doctors, plaintiff makes this blanket allegation without further development.  The record indicates that the ALJ considered the opinions of the consultants but then applied a more restrictive RFC because the record evidence and testimony indicated that plaintiff's condition had deteriorated in many respect.  Such consideration is appropriate and should be encouraged by the ALJ.  The ALJ's failure to use the specific phrase "great weight" or "little weight" should not undercut a decision where he acknowledges the consultants' opinions but ultimately weighed

other factors in favor of plaintiff.

**D. Weight to Lower Level State Doctors' Opinions**

Finally, plaintiff takes issue with the way in which the ALJ assigned weight to the opinions of Drs. Parsons, Goering and Henderson. Plaintiff argues that the applicable Social Security Rulings require the ALJ to state the weight, if any, accorded to the opinions of the non-examining or non-treating physicians issued at the lower level unless the treating source's opinion is given controlling weight. See 20 C.F.R. § 416; 20 C.F.R. § 404.1527; SSR 96-2P, 96-6P and 96-8P. Again, defendant acknowledges that the ALJ did not define the exact weight given to each doctor, but the ALJ indicated that the plaintiff was more limited than previously determined. Additionally, defendant argues that plaintiff provided no analysis.

The ALJ did assess the medical evidence of treating and non-treating sources. The ALJ was clear to note that no treating or examining medical source recommended work limitations or gave an opinion that the claimant is disabled. (Tr. 27). Plaintiff's counsel also cited no medical evidence stating the same. The ALJ considered the medical evidence, including those of the treating doctors, and determined that plaintiff was not disabled. Substantial evidence supports the ALJ's determination.

IT IS ACCORDINGLY ORDERED this 11th day of August 2006, that the court denies plaintiff's request to reverse and remand the final decision of the Commissioner (Dkt. No. 8).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE